```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION

UNITED STATES OF AMERICA,      )   Docket No. 15 CR 315
                               )
               Plaintiff,      )   Chicago, Illinois
                               )   June 9, 2015
          v.                   )   2:01 p.m.
                               )
JOHN DENNIS HASTERT,           )
                               )
               Defendant.      )


         TRANSCRIPT OF PROCEEDINGS - Arraignment
         BEFORE THE HONORABLE THOMAS M. DURKIN


APPEARANCES:


For the Government:   HONORABLE ZACHARY T. FARDON
                      United States Attorney by
                      MR. STEVEN A. BLOCK
                      MS. CARRIE E. HAMILTON
                      Assistant United States Attorneys
                      219 S. Dearborn Street, 5th Floor
                      Chicago, IL 60604


For the Defendant:    SIDLEY AUSTIN LLP by
                      MR. THOMAS C. GREEN
                      1501 K Street NW, Suite 600
                      Washington, D.C. 20005


                      SIDLEY AUSTIN LLP by
                      MR. JOHN N. GALLO
                      One S. Dearborn Street
                      Chicago, IL 60603


Court Reporter:       LAURA R. RENKE, CSR, RDR, CRR
                      Official Court Reporter
                      219 S. Dearborn Street, Room 1432
                      Chicago, IL 60604
                      312.435.6053
                      laura_renke@ilnd.uscourts.gov
```

1        (In open court.)
2             THE CLERK:  All rise.
3             Be seated, please.
4             15 CR 315, United States of America v. John Dennis
5   Hastert.
6             MR. BLOCK:  Good afternoon, your Honor.  Steven Block
7   and Carrie Hamilton on behalf of the United States.
8             THE COURT:  Good afternoon.
9             MR. GREEN:  If your Honor please, Thomas Green and
10  John Gallo of Sidley Austin for Speaker Hastert.
11            THE COURT:  All right.  Good afternoon.
12            MR. WHEATLEY:  And James Wheatley, Pretrial Services.
13            THE COURT:  All right.  We're here on an arraignment
14  and setting conditions of release, correct?
15            MR. BLOCK:  Yes, Judge.
16            THE COURT:  All right.  Has the defendant received a
17  copy of the indictment?
18            MR. GREEN:  He has, your Honor.
19            THE COURT:  And do you waive the reading of it?
20            MR. GREEN:  We waive reading of the indictment.
21            THE COURT:  What are the maximum penalties?
22            MR. BLOCK:  The maximum penalty of each count in the
23  indictment is five years in prison, a $250,000 fine, and a term
24  of supervised release of not more than three years.
25            THE COURT:  All right.  And what is the plea of the

1  defendant as to the two-count indictment?
2          MR. GREEN:  Defendant enters a plea of not guilty to
3  both counts of the indictment, your Honor.
4          THE COURT:  All right.  That will be entered.
5          All right.  As to conditions of release.  The proposal
6  that has set forth various conditions: have you had a chance to
7  review that, Mr. Green?
8          MR. GREEN:  We have.  We have reviewed them and
9  reviewed them with our client as well, your Honor.
10         THE COURT:  All right.  Do you have any objections to
11  the nonstandard conditions that are set forth on the second
12  page?
13         MR. GREEN:  I just have one caveat.
14         May I retreat to get my copy from the table?
15         THE COURT:  Absolutely.  Go ahead.
16         MR. GREEN:  I think the only condition that we need to
17  address, your Honor, is the last one on the second page, which
18  is remove all firearms from defendant's property within
19  48 hours.
20         Mr. Hastert has two sons, each of whom has a safe
21  located on his property in which firearms are stored.
22  Mr. Hastert has no access to either of those safes.  One son is
23  traveling in Europe on business.  And another son is closer by,
24  but lives in Chicago where I understand he can't take the
25  firearms.

```
 1              And so we would request a little more time in order to
 2   comply with that condition.
 3              THE COURT:  How much time do you need?
 4              MR. GREEN:  Pardon, sir?
 5              THE COURT:  How much time do you need?
 6              THE DEFENDANT:  A week.
 7              MR. GALLO:  I think two weeks.
 8              MR. GREEN:  I think maybe two weeks.  Is that --
 9              THE COURT:  Any objection from the government if they
10   are, as represented, not accessible to the defendant and
11   they'll be removed as soon as the people who have the
12   combination can come back in town and do it?
13              MR. BLOCK:  Judge, we think they should be removed as
14   soon as possible, and if two weeks is what it takes, we have no
15   objection to that.
16              THE COURT:  All right.  We'll make it two weeks.
17              MR. GREEN:  Thank you, sir.
18              THE COURT:  All right.  And does the government have
19   any objection to these proposed conditions?
20              MR. BLOCK:  We do not, your Honor.
21              THE COURT:  All right.  Has the defendant had a chance
22   to read this over?
23              MR. GREEN:  Yes, sir.
24              THE COURT:  All right.  And has he signed it?
25              MR. GREEN:  He has not yet signed it, your Honor.
```

1    THE COURT: All right. Why don't you have him do that
2 now.
3    MR. GREEN: Okay.
4    (Counsel conferring.)
5    THE COURT: And there's also an appearance bond, an
6 unsecured bond of $4,500, which is the traditional bond set in
7 such cases. And he should review that also and execute that.
8    (Counsel conferring.)
9    THE COURT: All right. First the appearance bond.
10 Mr. Hastert, this is an unsecured bond of $4,500. And it will
11 be forfeited if you fail to appear for court proceedings and,
12 if you're convicted, if you fail to surrender to serve a
13 sentence the Court may impose or if you fail to comply with all
14 conditions set forth in the order setting conditions of
15 release.
16    Do you understand that?
17    THE DEFENDANT: Yes.
18    THE COURT: Okay. In addition -- and is this your
19 signature on the second page of that document?
20    THE DEFENDANT: Yes.
21    THE COURT: All right.
22    All right. And the conditions of bond I'm going to go
23 through with you now. As a condition of release, you're
24 subject to the following conditions:
25    You must not violate federal, state, or local law

1  while on release.
2       You must cooperate in the collection of a DNA sample
3  if it's authorized by 42 U.S.C. § 14135a.
4       You must advise the Court or the Pretrial Services
5  office or supervising officer in writing before making any
6  change of residence or telephone number.
7       You must appear in court as required and, if
8  convicted, must surrender as directed to serve a sentence that
9  the Court may impose.
10      You must sign an appearance bond, which you, in fact,
11 have just done.
12      And it's further ordered that you must surrender any
13 passport to Pretrial Services.  If you don't have it here, you
14 should make sure you get that to Pretrial Services or to your
15 attorney --
16      MR. GREEN:  That's been done.
17      THE COURT:  -- who will give it to Pretrial Services.
18      That has been done?
19      MR. GREEN:  Done already, your Honor.
20      THE COURT:  All right.  Thank you.
21      You should not obtain a passport or any other
22 international travel document while on these conditions of
23 release.
24      You must abide by the following restrictions on
25 personal association, residence, or travel, and that is travel

1  is restricted to the continental United States.

2          You should avoid all contact, directly or indirectly,
3  with any person who is or may be a victim or witness in the
4  investigation or prosecution.

5          You should not possess a firearm, destructive device,
6  or weapon.

7          And as we just discussed, you should remove all
8  firearms from your property, or your sons or someone else
9  should remove them from your property by June 23rd, 2015.

10          Violating any of the foregoing conditions of release
11  may result in the immediate issuance of a warrant for your
12  arrest, revocation of your release, an order of detention, a
13  forfeiture of any bond, and a prosecution for contempt of court
14  and could result in imprisonment or a fine -- a fine, or both.

15          While on release, if you commit a federal felony
16  offense, the punishment is an additional prison term of not
17  more than ten years, and for a federal misdemeanor offense, the
18  punishment is an additional prison term of not more than one
19  year.  The sentence will be consecutive -- in addition to --
20  any other sentence you receive.

21          In addition, it is a crime punishable by up to ten
22  years in prison, and a $250,000 fine, or both, to obstruct a
23  criminal investigation; tamper with a witness, victim, or
24  informant; retaliate or attempt to retaliate against a witness,
25  victim, or informant; or intimidate or attempt to intimidate a

1  witness, victim, juror, informant, or officer of the court.

2  The penalties for tampering, retaliation, or
3  intimidation are significantly more serious if they involve a
4  killing or attempted killing.

5  If after release you knowingly fail to appear as the
6  conditions of release require, or to surrender to serve a
7  sentence, you may be prosecuted for failing to appear or
8  surrender, and additional punishment may be imposed.

9  Additional conditions relating to violations are set
10 forth in the -- in this advice section.

11 You should know that a term of imprisonment imposed
12 for failure to appear or surrender will be consecutive to any
13 other sentence you receive.  In addition, a failure to appear
14 or surrender may result in the forfeiture of any bond posted.

15 Is this, in fact, your signature on these conditions
16 of bond?

17 THE DEFENDANT:  Yes, sir.

18 THE COURT:  All right.  And did you read this document
19 before you signed it?

20 THE DEFENDANT:  Yes, your Honor.

21 THE COURT:  And do you understand it?

22 THE DEFENDANT:  Yes, sir.

23 THE COURT:  All right.  And you understand all the
24 conditions I just set forth to you?

25 THE DEFENDANT:  Yes, your Honor.

1            THE COURT:  All right.  And I will enter the order
2   directing the marshals to release you after processing.
3            Has the defendant been processed by the marshals?
4            MR. GREEN:  Yes, sir.
5            THE COURT:  All right.  Then the only thing he will
6   have to do after completion of this is report to the Pretrial
7   Services.  You can speak to the Pretrial Service officer about
8   that.  But that will be something he needs to do after court is
9   done today.
10           MR. GREEN:  We've also been asked to report back to
11  the Marshals Service for just one other formality.  I'm not
12  sure what it is, but --
13           MR. GALLO:  The e-mail, Judge, is what they said.
14           THE COURT:  Okay.  That's fine.  I think they need to
15  get a copy of this order of release.  So you should do that.
16           All right.  I want to make a few comments now.
17           This case was indicted and randomly assigned to me on
18  May 28th, 2015.
19           The defendant's arraignment was scheduled for
20  Thursday, June 4th, without consulting the parties.  One of the
21  parties asked that it be changed to today, with the agreement
22  of the other party.  I granted that request.
23           I want to make some disclosures, although I believe
24  most of what I'm going to disclose is already a matter of
25  public record or already known by one or both of the parties.

As far as I can recall, I have never met the defendant.

I worked at the law firm of Mayer Brown as a partner from 1993 to 2013. More than ten years ago, I made two contributions through one of my partners at Mayer Brown to the defendant's congressional campaigns: a $500 contribution in June 2002 and a $1,000 contribution in June 2004.

These contributions were made when I was a private citizen, after I left the U.S. Attorney's office and before I became a federal judge.

The defendant's son, Ethan Hastert, became an associate at Mayer Brown starting in September of 2005. He was one of hundreds of attorneys at Mayer Brown who I worked with during my 20 years at the firm. I actively worked with him on one matter beginning in August 2011 and ending shortly before I left the firm. Some of the work on that matter involved business travel, usually with our client. I believe I was on three or four trips with Ethan Hastert, usually lasting a week or less. We certainly were friendly business colleagues; however, our families never met, and he's never been to my home nor I to his. I do not consider him a personal friend.

I have not seen Ethan Hastert that I can recall in nearly two and a half years since I left the firm. And I spoke to him once on the phone in that time, and it was unrelated to his father. We certainly did not speak about this case, as I

1   of course had no knowledge of it until the indictment was filed
2   on May 28th of this year.
3       I believe I sent an e-mail to one of the defendant's
4   Illinois staff members in the mid-1990s seeking to be
5   considered for federal judicial openings. Nothing ever came of
6   it. I never received a response, and I never followed up. I
7   did not formally express an interest in becoming a federal
8   judge then until 2009 when I applied to Senator Durbin's
9   bipartisan selection committee.
10      My brother Jim Durkin is the Illinois House Minority
11  Leader. He and the defendant are both associated with the same
12  political party. I have never met the defendant through my
13  brother Jim. Indeed, as I mentioned earlier, I have never met
14  the defendant. The defendant is not a personal friend of my
15  brother.
16      Finally, I was formerly an Assistant U.S. Attorney in
17  Chicago, occupying the same type of position as Mr. Block and
18  Ms. Hamilton. I was in that office from 1980 to 1993, serving
19  in several supervisory positions during some of the later
20  years, as Deputy Chief and then Chief of the Criminal Receiving
21  and Appellate Division, as Chief of the Special Prosecutions
22  Division, and, finally, as the First Assistant U.S. Attorney.
23      Mr. Block is assigned to other cases in front of me.
24  When I was in private practice, I represented some witnesses in
25  a case assigned to Ms. Hamilton.

1            I do not know Mr. Green.  Mr. Gallo was in the
2   U.S. Attorney's office as an Assistant U.S. Attorney for about
3   the last three years I was there.  I did not try any cases with
4   Mr. Gallo, although as First Assistant U.S. Attorney, I was his
5   overall supervisor.  We have been friendly professional
6   colleagues since that time but are not close personal friends.
7   I've never been to his house nor he to mine, and our families
8   have never met.
9            The federal statute relevant to disqualification of a
10  judge is 28 U.S.C. § 455.
11           Under that law, which I of course must follow, I must
12  disqualify myself if I was involved in this case when I was in
13  private practice, if I have any financial interest in the
14  subject matter of the controversy, or if I have any family
15  members involved in the case.  None of these circumstances
16  exist.
17           In addition, I must disqualify myself if I have a
18  personal bias or prejudice concerning a party or personal
19  knowledge of disputed evidentiary facts concerning the
20  proceeding.  I have neither.
21           I have no doubt I can be impartial in this matter.  If
22  I had any such doubts, I would have disqualified myself the day
23  I was randomly assigned the case.
24           Finally, under 28 U.S.C. 455(a), I must disqualify
25  myself if my "impartiality might reasonably be questioned."

1           I am not so naive to believe that a reasonable person
2    would not question my impartiality taking all of these
3    circumstances together, as I must here.
4           On this basis, I find that under 28 U.S.C. 455(a), a
5    reasonable person would believe my impartiality might
6    reasonably be questioned and that there exists a basis for my
7    disqualification from the case, and so I must -- and so I do
8    disqualify myself from hearing the case.
9           However, that's not end of the analysis.  Under the
10   relevant statute, 28 U.S.C. § 455(e), this type, and only this
11   type, of disqualification is waivable "provided it is preceded
12   by a full disclosure on the record of the basis for
13   disqualification" as I have made here today.
14          Under circumstances such as these, Section 455(e)
15   leaves to the parties the decision of whether they wish to
16   waive my grounds for disqualification.  By permitting waiver,
17   the statute recognizes that the persons best suited to
18   determine whether I can be fair and impartial are the parties
19   themselves.  The parties are best suited to make this decision
20   because each side has a significant interest, unequaled by any
21   third parties, that I decide issues in this case fairly and
22   impartially.
23          Canon 3(D) of the Code of Conduct for the United
24   States Judges counsels that the parties should be permitted to
25   consider a waiver in the following manner: "the parties and

their lawyers [should be given] an opportunity to confer outside the presence of the judge, [and] all agree in writing or on the record that the judge should not be disqualified." Assuming "the judge is ... willing to participate," as I am here, "[t]he agreement should be incorporated in the record of the proceeding."

I don't want this issue to linger. Accordingly, I'm going to give the parties until 4:00 p.m. on Thursday, June 11th, to decide whether to waive the grounds for disqualification that I've identified.

There is a mechanism to implement the waiver process, which I will utilize here. This mechanism creates a confidential decision-making process, ensuring that each side can come to a decision without any fear or anxiety that it will offend me in the least, since I will not know who declined to waive the grounds for disqualification I've identified. I will not be offended whatever the result, I assure you, but this assures the parties that they need not be concerned about it.

The parties will separately communicate their decision as to whether they wish to waive my disqualification under Section 455(a) to the Clerk of the Court, Thomas Bruton. Mr. Bruton will simply inform me whether both parties have waived the grounds for disqualification or not. If not, I will never know which party, or indeed if both parties, refused to waive. If that occurs, the case will again be randomly

1  assigned to another judge of this Court.  I will have no
2  further contact with this case, and any schedules as to the
3  case will be set by the new judge.
4      If the case remains with me, the waiver documents will
5  be added to the public docket for this case.  I will then set
6  it for a further status conference a short time later to
7  discuss scheduling going forward.  The defendant's presence
8  will be waived, which is always my practice with
9  non-incarcerated defendants for status conferences discussing
10 scheduling.  The defendant is of course free to come to court,
11 but he's not required to do so.
12     My courtroom deputy will hand each side the notice and
13 the letter concerning waiver of judicial disqualification.  You
14 should carefully examine the notice and letter accompanying it,
15 and if you wish to waive, carefully follow the directions on
16 it, which require the signatures of the attorneys and also of
17 the defendant.  So there is no mystery about this process, an
18 unexecuted copy of this notice and letter will be posted on the
19 public docket of this case immediately following these
20 proceedings.
21     I specifically do not want either side to address the
22 issue of waiver at this time in front of me.  The only proper
23 way to address the issue is as I have just outlined.
24     Also, the Court received several letters from the
25 public about the case.  They will be made part of the public

1  record.  They played no role in any of my decisions today.
2          Are there any other issues we need to discuss at this
3  time?  First from the government.
4          MR. BLOCK:  Not at this time, your Honor.
5          THE COURT:  From the defense.
6          MR. GREEN:  No, sir.
7          THE COURT:  All right.  Thank you.  Court is
8  adjourned.
9          MR. GREEN:  Thank you, your Honor.
10         MR. BLOCK:  Thank you, your Honor.
11         THE CLERK:  All rise.
12      (Concluded at 2:18 p.m.)
13                    C E R T I F I C A T E
14    I certify that the foregoing is a correct transcript of the
15  record of proceedings in the above-entitled matter.
16
17  */s/ LAURA R. RENKE*                          *June 9, 2015*
    LAURA R. RENKE, CSR, RDR, CRR
18  Official Court Reporter