

FILED
OCT 28 2015
10-28-15
Judge Thomas M. Durkin
United States District Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOHN DENNIS HASTERT | No. 15 CR 315<br><br>Judge Thomas M. Durkin |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant JOHN DENNIS HASTERT, and his attorneys, THOMAS C. GREEN and JOHN N. GALLO, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The indictment in this case charges defendant with knowingly and willfully making materially false statements and representations in a matter within the jurisdiction of the Federal Bureau of Investigation, in violation of Title 18, United States Code, Section 1001(a)(2) (Count 1), and knowingly structuring currency transactions to evade reporting requirements, in violation of Title 31, United States Code, Section 5324(a)(3) (Count 2).

3. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorneys.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count 2 of the indictment. Count 2 charges defendant with knowingly and for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a) and regulations prescribed thereunder, structuring and assisting in structuring currency transactions, in violation of Title 31, United States Code, Section 5324(a)(3).

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count 2 of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt.

Beginning no later than July 2012, and continuing until on or around December 6, 2014, in the Northern District of Illinois, Eastern Division, and elsewhere, JOHN DENNIS HASTERT, knowingly and for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a) and regulations prescribed thereunder, structured and assisted in structuring transactions at Old Second Bank, People's State Bank, Castle Bank and Chase Bank by withdrawing and causing the withdrawal of $952,000 in United States

2

currency in amounts under $10,000 in separate transactions on at least 106 occasions, in violation of Title 31, United States Code, Section 5324(a)(3).

More specifically, HASTERT has known Individual A most of Individual A's life. In or about 2010, HASTERT met with Individual A multiple times. During at least one of the meetings, Individual A and HASTERT discussed past misconduct by HASTERT against Individual A that had occurred several decades earlier. During the 2010 meetings and subsequent discussions, HASTERT agreed to provide Individual A $3,500,000 in order to compensate for and keep confidential his prior misconduct against Individual A. Shortly thereafter, HASTERT began providing Individual A cash payments. From approximately 2010 to 2014, HASTERT withdrew a total of approximately $1,700,000 in cash from various bank accounts he controlled and provided it to Individual A.

From approximately June 2010 through April 2012, HASTERT made fifteen $50,000 withdrawals of cash from bank accounts he controlled at Old Second Bank, People's State Bank, and Castle Bank, and provided that cash to Individual A approximately every six weeks to satisfy the agreement to pay Individual A $3,500,000.

In approximately April 2012, pursuant to bank policy and federal regulations, bank representatives questioned HASTERT about the $50,000 cash withdrawals that he had made. In July 2012, HASTERT began withdrawing cash in increments of less than $10,000. HASTERT provided that cash to Individual A in increments of

$50,000 at pre-arranged meeting places and times. In approximately 2014, HASTERT and Individual A changed the timing and amounts of the payments so that HASTERT provided Individual A $100,000 every three months. HASTERT continued to withdraw cash in increments of less than $10,000. HASTERT provided that cash to Individual A in increments of $100,000 at pre-arranged meeting places and times.

In total, between July 2012 and December 6, 2014, HASTERT withdrew $952,000 in cash in increments of less than $10,000 in order to evade currency transaction reporting requirements because he wanted his agreement with Individual A to remain secret.

On December 8, 2014, agents of the Federal Bureau of Investigation interviewed HASTERT regarding his cash withdrawals over the prior four and a half years that totaled in excess of $1,700,000. During the interview, HASTERT intentionally concealed from the agents that he withdrew the money to compensate Individual A and the reason for the agreement with Individual A. Accordingly, HASTERT told the agents that he was keeping the cash he had been withdrawing in a safe place. HASTERT made these statements to mislead the agents as to the actual purpose of the withdrawals and what he had done with the money.

## Maximum Statutory Penalties

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

      a.    Count 2 carries a maximum sentence of 5 years' imprisonment. Count 2 also carries a maximum fine of $250,000. Defendant further understands that with respect to Count 2, the judge also may impose a term of supervised release of not more than three years.

      b.    In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the count to which he has pled guilty, in addition to any other penalty imposed.

### Sentencing Guidelines Calculations

8.    Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9.    For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

      a.    **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2014 Guidelines Manual.

b.  **Offense Level Calculations.**

i.  Pursuant to Guideline § 2S1.3(a)(2) and (b)(3), the base offense level is 6.

ii.  Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

c.  **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d.  **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 4, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 0 to 6 months' imprisonment, in addition to any supervised release and fine the Court may impose.

e. Both parties expressly acknowledge that while none of the guidelines calculations set forth above are binding on the Court or the Probation Office, the parties have agreed pursuant to Fed.R.Crim.P. 11(c)(1)(B) that certain components of those calculations—specifically, those set forth above in subparagraph 9(b)(i)—are binding on the parties, and it shall be a breach of this Agreement for either party to present or advocate a position inconsistent with the agreed calculations set forth in the identified paragraph.

10. Defendant understands that with the exception of the guidelines provision identified above as binding on the parties, the guidelines calculations set forth above are non-binding predictions, upon which neither party is entitled to rely, and are not governed by Fed.R.Crim.P. 11(c)(1)(B). Errors in applying or interpreting any of the sentencing guidelines (other than those identified above as binding) may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation.

Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

### Agreements Relating to Sentencing

11. The government agrees to recommend that the Court impose a sentence within the applicable guideline range.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

14. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining count of the indictment as to defendant.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

15. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 15 CR 315.

16. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

17. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    e. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge

sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant.

Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

      vi.    At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

      vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

    f.    **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

18.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### **Presentence Investigation Report/Post-Sentence Supervision**

19.  Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

20.  Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

21.  For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's

individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

22. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

23. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

### Conclusion

24. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

25. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its

option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

26. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

27. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

28. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 10/28/15

_____
ZACHARY T. FARDON
United States Attorney

_____
STEVEN A. BLOCK
Assistant U.S. Attorney

_____
DIANE MacARTHUR
Assistant U.S. Attorney

_____
JOHN DENNIS HASTERT
Defendant

_____
THOMAS C. GREEN
Attorney for Defendant

_____
JOHN N. GALLO
Attorney for Defendant

15