```
 1                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                              EASTERN DIVISION

 3    UNITED STATES OF AMERICA,        )   Docket No. 15 CR 315
                                       )
 4                    Plaintiff,       )   Chicago, Illinois
                                       )   March 22, 2016
 5              v.                     )   12:43 p.m.
                                       )
 6    JOHN DENNIS HASTERT,             )
                                       )
 7                    Defendant.       )

 8
                     TRANSCRIPT OF PROCEEDINGS - Status
 9                 BEFORE THE HONORABLE THOMAS M. DURKIN

10
      APPEARANCES:
11

12    For the Government:    HONORABLE ZACHARY T. FARDON
                             United States Attorney by
13                           MR. STEVEN A. BLOCK
                             Assistant United States Attorney
14                           219 S. Dearborn Street, 5th Floor
                             Chicago, IL 60604
15

16    For the Defendant:     SIDLEY AUSTIN LLP by
                             MR. THOMAS C. GREEN (via telephone)
17                           1501 K Street NW, Suite 600
                             Washington, D.C. 20005
18

19                           SIDLEY AUSTIN LLP by
                             MR. JOHN N. GALLO
20                           One S. Dearborn Street
                             Chicago, IL 60603
21

22    Court Reporter:        LAURA R. RENKE, CSR, RDR, CRR
                             Official Court Reporter
23                           219 S. Dearborn Street, Room 1432
                             Chicago, IL 60604
24                           312.435.6053
                             laura_renke@ilnd.uscourts.gov
25
```

1     (In open court; defendant not present.)

2     (Clerk places telephone call.)

3     THE CLERK: Hi, Mr. Green. It's Sandy with Judge
4 Durkin. We just went ahead and called you because everybody
5 else is here in the courtroom.

6     MR. GREEN: Okay. I was just about to dial in.

7     THE CLERK: Okay. 15 CR 315, United States of
8 America v. Hastert.

9     THE COURT: All right.

10     MR. BLOCK: Good morning -- afternoon, your Honor.
11 Steven Block on behalf of the United States.

12     MR. GREEN: Thomas Green by telephone, your Honor.

13     MR. GALLO: And John Gallo on behalf of Mr. Hastert.

14     THE COURT: All right. There was a request to have a
15 status in this case, and we're doing it now. So what is the
16 reason for the request?

17     MR. BLOCK: The reason for the request, Judge -- and
18 I've had some discussions with defense counsel about this, and
19 we called your clerk for a little guidance as to how we should
20 proceed.

21     As your Honor knows, we disclosed a couple weeks ago a
22 witness. Individual D is how he's referred to in the
23 supplemental government's version. That is a witness who the
24 government has learned about relatively recently as reflected
25 in that.

1  As you might imagine, without getting into a lot of
2 details, his decision to talk to us has been quite a process
3 and a difficult one at that.
4  He is deciding whether he would like to ask the Court
5 to appear as a witness at the sentencing.  He's not a hundred
6 percent certain he wants to do that, but he has been moving in
7 that direction, significantly enough that he was inquiring
8 about the schedule and informed me that he is unable to be here
9 on April 8th because he has a preexisting -- I understand it's
10 a business trip out of town that, as I understand it, he's not
11 able to move.
12  I don't know the details of that, but that's what was
13 relayed to me.
14  So because of that, we recognize the interests of
15 everybody, both parties and the Court, in getting the
16 sentencing done.  At the same time, we're trying to balance
17 that with a -- I think a very unique witness, who we're trying
18 to be sensitive to, that he's in a very difficult position.
19  And if he would like the ability to address the Court
20 and if the Court's willing to listen to him, we would like as
21 the government to facilitate that as best we can.
22  So that is why we have prepared a motion to continue
23 the date.  But before we filed it, we reached out to see if
24 your Honor wanted to handle it a different way in terms of the
25 extension as soon as practicable.  We're not looking to extend

1  this either. It's simply that date does not work for this
2  particular witness.
3  　　　　　I know your Honor has asked if there are other
4  witnesses in the past of both parties. I understand that there
5  may be one other person who would like to speak as well. That
6  person does not have a conflict, as far as I know. It's really
7  this Individual D is the witness who has the conflict.
8  　　　　　THE COURT: Is the other witness someone who has been
9  identified by a letter in the indictment or in any of your
10 submissions?
11 　　　　　MR. BLOCK: The person has been identified to the
12 Court and the parties in the submissions.
13 　　　　　THE COURT: Which letter?
14 　　　　　MR. BLOCK: It's not a letter.
15 　　　　　THE COURT: Oh, there's a name?
16 　　　　　MR. BLOCK: There's a name.
17 　　　　　THE COURT: Okay. All right. Well --
18 　　　　　MR. GREEN: May I be heard, your Honor?
19 　　　　　THE COURT: Yeah. I just want to be -- because we
20 don't even have a formal motion in front of us. But you
21 anticipate one witness -- the witness who you've just referred
22 to, not the letter -- by letter, but the other witness, that
23 witness is definitely testifying?
24 　　　　　MR. BLOCK: As I understand it, yes.
25 　　　　　THE COURT: All right. And this other witness,

1     Individual D, is leaning toward testifying but has a conflict
2     on the date we have set for sentencing.
3               MR. BLOCK:  Yes, your Honor.
4               THE COURT:  Okay.  Mr. Green, go ahead.
5               MR. GREEN:  Thank you, sir.
6               I have a couple of things that I would like to state
7     here.  First of all, this Witness D, as Mr. Block has
8     indicated, has not apparently made a final decision whether he
9     wishes to add something at sentencing or not.  That's number
10    one.  And I think that the -- you know, the government should
11    at least be obligated to drill down on that a little further
12    here.  That's I think important.
13              If we're going to continue the sentencing, we are not
14    available in April, both because of Sidley's partners' meeting
15    on one date, which is out of town and a very significant
16    meeting, and then there's a religious holiday, Jewish religious
17    holiday, Passover, on the last Friday.
18              And so that puts us -- I don't know where that puts us
19    on your calendar.
20              But the other thing is that Mr. D -- Mr. D has been
21    interviewed by the government, and the information which he
22    imparted to the government is -- has been shared with the
23    probation officer.  It's shared with the Court and shared with
24    us.
25              And neither Mr. D nor this other person, whom I'll

1  address in a moment, are classic victims under the Victim
2  Protection Act of -- I haven't got my manual in front of me.
3  But they're not classic victims, and so they have no statutory
4  entitlement to appear.
5      And I think it's clear from the research I've seen
6  that the Court has discretion to accept whatever remarks these
7  individuals wish to make in writing.  And I think there's a
8  compelling reason for getting the sentencing concluded given my
9  client's health and physical situation.  You know, we feel very
10 strongly that we would like to see this be completed as
11 presently scheduled.
12     And, you know, I'm hopeful that the Court would
13 consider receiving whatever information these individuals have
14 in writing and then considering it on the papers, so to speak.
15     The other person is a woman who has been very public
16 in her remarks.  She's been on the networks.  She's been
17 interviewed in the newspapers.  And my understanding of her
18 information is that her brother, who is now deceased, told her
19 some number of years ago that he had had a sexual experience or
20 experiences with my client.
21     And in all of the accounts that this woman has given
22 in the press, at least the ones I've seen, she was -- she did
23 not come forth with any details of what -- or any, you know,
24 specific allegations of conduct on the part of my client.  And
25 it appears that she may well not be in possession of any

1  details, even if, indeed, there are details.  And her
2  observations would certainly be hearsay in substantial respect.
3       So I don't know exactly what -- what she would offer
4  or what benefit the Court would receive from her hearsay
5  statements which have been, as I say, publicized widely up to
6  this point in time.
7       So that's -- you know, that's -- that's kind of my
8  thinking on this at this point.
9       THE COURT:  All right.  And, Mr. Gallo, since you
10 can't consult with Mr. Green face to face, is there anything
11 you want to add on behalf of the defense?
12      MR. GALLO:  Judge, only that we are prepared with
13 respect to Individual C -- or D, rather.  It is not our present
14 intention to contest the allegations made by Individual D.  So
15 we're -- what's in the supplement to the government's version
16 of the offense, at the present time we have no intention of
17 objecting to it.  So that's a data point for the Court.
18      The other thing is I have cases, Judge, which talk
19 about the issue, in particular about in circumstances where
20 there's no dispute about non-victim statements that the Court
21 should limit those statements to written submissions.  I have a
22 couple cites here, but -- which I can give the Court.  So --
23      THE COURT:  All right.  Mr. Block?
24      MR. BLOCK:  Couple points, Judge.
25      First, as to the issue of whether these individuals

1   are considered victims under the Victim Protection Act, it's
2   not our contention that they are. There's not a statutory
3   right for them to speak, and they would be subject to cross-
4   examination in a way they would not be if they were under the
5   act.
6          However, that doesn't end the inquiry. The Court
7   oftentimes hears testimony from witnesses or statements at
8   sentencing to help the Court make decisions, both from the
9   defendant and from the government. There's nothing unusual
10  about that.
11         To Mr. Green's point, he appears to be collapsing a
12  couple things together: One is the schedule, and two is
13  whether the Court should let these witnesses speak at all.
14  Those seem to be separate issues.
15         But as to whether the Court should let them speak,
16  government's view that absolutely the Court should let them
17  speak. It's relevant information as to the defendant's history
18  and characteristics. The fact that the defense may not
19  challenge the specifics of what the defendant did to Mr. D does
20  not mean the Court shouldn't consider the effects on
21  Individual D. And I fully expect that is what he is going to
22  testify or give a statement about is how this has affected his
23  life.
24         Similarly, the other witness we've been talking about,
25  whether it's hearsay or not, she certainly can provide useful

1   information to the Court as to what the defendant's conduct did
2   to her, to her family. And I would expect the Court would want
3   to factor that information in whatever way it thought relevant
4   at a sentencing.
5           So we do think they should be allowed to speak if
6   that's the issue. And, unfortunately, because of the process
7   that Individual D is going through, which I don't think we
8   should make light of, we're asking for more time.
9           And that's -- I'm not here lightly either. Obviously,
10  we want to get this done with. But we thought it was important
11  enough that we had to come and ask your Honor.
12          THE COURT: All right.
13          MR. GREEN: May I add something, sir?
14          THE COURT: Last words. Then I'm going to have my own
15  comments. But go ahead, Mr. Green.
16          MR. GREEN: Your Honor, if I heard Mr. Block correctly
17  that D wishes to come and testify, you know, about the impact
18  it's had, I do note from reading D's 302, et cetera, that it
19  appears that he's consulted, you know, medical help and maybe
20  even psychological help or whatever.
21          And, you know, I look upon D as I would any other
22  witness, that if he's going to come and put his emotional
23  well-being or physical well-being into issue, then I think
24  there's an implicit waiver of his privilege with any physician
25  or mental health specialist.

1  And I would seek, you know, discovery by way of
2  subpoena or whatever so that I have -- I mean, if he's going to
3  come, I need to be prepared to cross-examine. I don't know
4  whether I would or wouldn't, but I need to be prepared. I owe
5  that obligation to my client. And so I just want to note that
6  as well.
7  THE COURT: All right. Well, under 3553(a), I am
8  required to consider the history and characteristics of the
9  defendant. If victims of -- and let's not beat around the
10 bush. If Individual D wants to come in and talk about being a
11 victim of sexual abuse, he's entitled to do so because that
12 informs my decision about the history and characteristics of
13 the defendant. It's that simple.
14 If the sister of a victim of sexual abuse wants to
15 come in and talk about her interactions with her brother and
16 talk about that, that is something that would inform my
17 decisions about the history and characteristics of the
18 defendant.
19 If the government chooses to bring them in as live
20 witnesses, they're entitled to do so. Hearsay is admissible in
21 a sentencing hearing, so I'm not concerned about hearsay
22 regarding the sister.
23 But if they want to come in and they're willing to
24 testify as live witnesses, they're absolutely entitled to do
25 so, and the government's entitled to call them as live

1  witnesses.
2       If the government wants to present that evidence
3  through documents, they can.  And I'm leaving that up to the
4  government because they're the ones that are presenting this in
5  aggravation.
6       So that's my ruling.
7       Now, Mr. Green, if you want to cross-examine
8  Individual D about aspects of that, it really depends on what
9  your cross is.  There's limits to the kinds of cross -- legally
10 there's limits, and, frankly, as a practical matter, I'd be --
11 there are practical limits to what I would allow on cross-
12 examination of this.
13      If you think there is something factually incorrect
14 with what the witness is saying, in spite of Mr. Gallo just
15 saying that you're prepared to admit to what Individual D says,
16 but if you think there's something that Individual D says in
17 court that's factually inaccurate or in any way subject to
18 cross, you'll get to cross-examine him.
19      But I'm not going to delay this for any lengthy period
20 to allow a -- you know, multiple subpoenas to go out.
21      Mr. Block, if Individual D is coming -- going to
22 testify, I'd ask you to speak to Mr. Green and Mr. Gallo.  Give
23 them a preview of what he intends to say.  Then, Mr. Green, you
24 decide when you know what he's going to say whether you feel it
25 necessary to issue subpoenas to get records that would possibly

1 impeach anything he may say.

2 But I'm not going to prejudge that until we actually
3 have a representation from the government about what he's going
4 to say.

5 MR. GREEN: Yes, sir. I understand.

6 THE COURT: Okay. I have appointed a medical expert.
7 I'm not going to identify him at this time. I will shortly by
8 way of a court order. But I have identified a medical expert
9 that the parties are aware of. He is fast at work reviewing
10 medical records so that I can get, to my satisfaction, an
11 independent medical opinion as to the health of the defendant.
12 And he is fast at work on that.

13 At some point he will let me know whether he feels it
14 necessary to either interview the defendant or possibly even
15 examine him, but I'm leaving that up to his expert -- his own
16 expertise because he has extensive medical records he is
17 reviewing. And whether he needs to do more beyond review the
18 records to render an opinion to me is something I'm going to
19 leave up to him. It's not my expertise, and that's why I have
20 him employed to do this.

21 As to the date itself, Mr. Block, the Individual D is
22 aware of the seriousness of trying to move this ahead and why
23 moving this date is going to impact a number of things?

24 MR. BLOCK: Yes, Judge.

25 THE COURT: All right. And is his trip immovable?

1         MR. BLOCK: It is. And, Judge, we did reach out to
2 him again right before coming to court to try and have the
3 latest update. And the information I've received, once again,
4 is that, without putting too many details on the record, it's a
5 business trip involving several other people and, for
6 professional reasons, he can't move it and also that he is
7 currently -- as I expected, he is inclined to appear in person
8 to seek the Court's permission to make a statement or provide
9 testimony.
10         THE COURT: No, and I'll let him. I will certainly
11 let him.
12         All right. Well, the problem is if we don't do it on
13 April 8th, Mr. Green, you and Mr. Gallo are unavailable the
14 rest of April?
15         MR. GALLO: Well, Judge, the two dates you gave us
16 were the 15th and the 22nd.
17         THE COURT: I could work on other dates. My problem
18 is if we get into May, I can't do it until the week of the 23rd
19 of May.
20         MR. GALLO: Okay. Well, the dates that we had
21 heard -- so if there are other dates in April, Judge, that's a
22 different story.
23         THE COURT: I could possibly give you some dates the
24 week of the 25th. I have a trial scheduled, but I may
25 reschedule that trial in order to allow for this sentencing to

1   occur.

2         MR. GALLO: Okay.

3         THE COURT: And if there's another date that will
4   work, rather than put this all on the record, we'll go off the
5   record. I'll allow you all to speak to Ms. Newland and discuss
6   a date.

7         And there's another matter I want to put on the
8   record -- but I want to seal it -- that deals with the identity
9   of Individual D. And so we are now going to remain on the
10  record, but this part of the transcript is going to be sealed.

11        (Proceedings had under seal not herein transcribed.)

12        THE COURT: Now we're back on the record in unsealed
13  portion.

14        And I'd ask the parties to speak to my courtroom
15  deputy about an acceptable date in April, possibly the week of
16  the 25th. I'm willing to defer or move a trial I have that
17  week in order to accommodate the parties' schedules and the
18  witness's schedules.

19        Is it still the anticipation of the parties that this
20  entire sentencing will last no more than a day?

21        MR. BLOCK: Certainly for the government, yes.

22        MR. GALLO: Unquestionably.

23        THE COURT: Okay. Then we will give you a day. I
24  won't limit it to a morning or an afternoon. We'll start in
25  the morning. I'll keep the day clear in the event things spill

1   over. But I'll keep the day clear. But I'd ask you offline
2   with my courtroom deputy to work together on an acceptable date
3   that works for the government's witnesses, works for the
4   defendant and defense counsel.
5          And, as I said earlier, hopefully I'll have some more
6   clarity from the court-appointed expert about the defendant's
7   health also.
8          All right. Anything else we need to discuss --
9   Mr. Block, are you going to make a formal motion to continue
10  the sentencing date?
11         MR. BLOCK: If your Honor would like me to file it, I
12  will. If I don't need to, I certainly don't need to.
13         THE COURT: No, you've made an oral motion to continue
14  it today, and that's sufficient. We don't need a written
15  motion. And this will be part of the public record, so if
16  anyone wants to see it, they're free to see the reasons why
17  you're seeking an extension of the sentencing date.
18         So work with my courtroom deputy on a date. If we
19  can't arrive at a date, I'm going to ask you to come back for
20  another status, a brief status, and we'll come up with another
21  date that may be extended. And I don't want to do that if at
22  all possible.
23         MR. GALLO: Thank you.
24         MR. BLOCK: Thank you, your Honor.
25         THE COURT: Anything else, Mr. Green, at your end?

1      MR. GREEN:  No, sir.  Thank you.

2      THE COURT:  All right.  Anything else from the

3  attorneys in court?

4      MR. BLOCK:  No, your Honor.

5      MR. GALLO:  No, your Honor.

6      THE COURT:  All right.  Thank you.

7    (Concluded at 1:07 p.m.)

8              C E R T I F I C A T E

9    I certify that the foregoing is a correct transcript of the

10 record of proceedings in the above-entitled matter.

11

12 */s/ LAURA R. RENKE*                          *March 23, 2016*
   LAURA R. RENKE, CSR, RDR, CRR
13 Official Court Reporter