# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 15 CR 315 |
| v. ) | |
| ) | Judge Thomas M. Durkin |
| JOHN DENNIS HASTERT ) | |
| ) | (FILED UNDER SEAL) |
| ) | |

## DEFENDANT JOHN DENNIS HASTERT'S RESPONSE TO THE PRESENTENCE REPORT AND SENTENCING RECOMMENDATION

Defendant John Dennis Hastert, by and through his counsel and pursuant to Federal Rule of Criminal Procedure 32(e) and Local Criminal Rule 32.1(g), hereby submits his response to the Presentence Report and Sentencing Recommendation issued in the above-captioned case ("PSR" and "Recommendation," respectively).

I. **The PSR Overstates the Total Offense Level.**

Mr. Hastert disagrees with the PSR guideline calculation of level 8. *See* PSR ¶¶ 31, 36. The PSR guideline calculation is based on the two-fold conclusion that: (1) a two-point enhancement for obstruction of justice, pursuant to United States Sentencing Guideline ("Guideline") § 3C1.1, is warranted, and (2) a two-point reduction for acceptance of responsibility, pursuant to Guideline § 3E1.1(a), is not warranted. Mr. Hastert respectfully submits that neither conclusion is supported by the law or facts in this case. As such, the PSR overstates the offense level by 4 points, and the correct offense level for the purposes of sentencing is 4.

   A. **The Obstruction of Justice Enhancement Is Inapplicable.**

The PSR departs from the positions adopted by both the government and Mr. Hastert by applying a two-level upward adjustment for obstruction of justice, pursuant to Guideline §

3C1.1. PSR ¶¶ 26–31. This conclusion is premised on four statements: (i) two statements made by Mr. Hastert during an unannounced interview by federal agents at his home on December 8, 2014, and (ii) two statements made in relation to Mr. Hastert's subsequent cooperation. Both the applicable Guidelines and Seventh Circuit precedent make clear that none of these statements can serve as the basis for a § 3C1.1 enhancement.

Pursuant to Guideline § 3C1.1, a two-level enhancement may only be applied where the following conditions are met. First, the defendant must "willfully obstruct[] or impede[], or attempt[] to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." Guideline § 3C1.1. Second, the obstructive conduct must relate to "(A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense." *Id.* Seventh Circuit case law is clear that the term "instant offense" in this context means "solely . . . the offense of conviction." *United States v. Polland*, 994 F.2d 1262, 1269 (7th Cir. 1993); *see also United States v. Partee*, 31 F.3d 529, 531 (7th Cir. 1994) (same). Put another way, "[S]ection 3C1.1 does not contemplate enhancements for obstruction of justice if the relevant conduct impedes the investigation or prosecution of a separate crime." *Polland*, 994 F.2d at 1269; *see also United States v. Hanhardt*, 361 F.3d 382, 389–90 (7th Cir. 2004), *vacated on other grounds, Altobello v. United States*, 543 U.S. 1097 (2005) (same).

Further, Commentary to Guideline § 3C1.1 instructs that where, as here, the statements at issue were not made under oath, the enhancement does not apply unless the defendant provided "a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense." *See* Guideline § 3C1.1, Commentary, App. Note 5 (making of false statements not under oath to law enforcement is

generally not covered unless Application Note 4(G) applies), *and* App. Note 4(G) (adjustment may apply where the defendant provided "a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense"); *see also Hanhardt*, 361 F.3d at 390.

The four statements identified in the PSR cannot serve as the basis for an obstruction enhancement. As discussed below, none of these statements relate to the "offense of conviction"—the structuring of Mr. Hastert's funds. Moreover, none of these statements were material in any way or operated to "significantly obstruct[] or impede[] the official investigation or prosecution" of the structuring.

> 1. <u>Mr. Hastert's statements during the December 8, 2014 interview do not warrant a two-point enhancement.</u>

The PSR concludes that Mr. Hastert made two obstructive statements during his December 8, 2014 interview with law enforcement agents: first, Mr. Hastert said that he was keeping the cash he withdrew "in a safe place" and, second, Mr. Hastert stated, "I exposed myself to a crime that I didn't know I was involved in. Yeah I didn't know." PSR ¶ 10. Neither qualifies for a Guideline § 3C1.1 enhancement.

Because Guideline § 3C1.1 applies here only if the statements at issue relate to the convicted offense, were material in nature, and significantly obstructed the official investigation, it is important to provide context regarding the events leading up to the December 2014 interview and Mr. Hastert's statements. As detailed in the Defendant's Version of the Offense ("Defendant's Version"), on December 8, 2014, at approximately 8:15 a.m., FBI agents came to Mr. Hastert's home unannounced. The agents were wired so their conversation would be secretly recorded. Importantly, at the time of the home visit, the government had already concluded that Mr. Hastert had committed the crime of structuring. Indeed, the government has

repeatedly made this clear through its own statements. For instance, the agents disclosed this fact to Mr. Hastert during their interview on December 8.[1] *See, e.g.*, December 8, 2014 Recording (hereinafter "Recording") at 21:25–22:55 ("Because there are days where you've hit multiple banks in the same, in the same day, and withdrawn nine thousand cash from each one. So those were very clear examples or, of structuring when you likely could have made the, the withdrawal from just one account . . . . So, um, they do have enough evidence to charge you . . . ."). Similarly, this fact is detailed in the Government's Version and reflected by the government's discovery. By the time of the interview, the FBI and the IRS had already investigated Mr. Hastert for nearly two years. Govt. Version at 3 ("In early 2013, the FBI and [IRS] learned about Hastert's withdrawal activity at Castle Bank along with three other banks at which Hastert had accounts."). Before speaking with Mr. Hastert, the government had obtained and analyzed Mr. Hastert's banking records and was aware of Mr. Hastert's withdrawal activities. *Id.* at 3–4. The government knew that Mr. Hastert had withdrawn $750,000 in increments of $50,000 between June 1, 2010 and April 13, 2012, and that Mr. Hastert "began withdrawing $9,000 at a time" after his April 2012 conversations with bank employees. *Id.* The government had also heard grand jury testimony from two bank employees who investigated and spoke with Mr. Hastert regarding his withdrawals. Based on the evidence gathered in advance of the interview, "it appeared obvious" to the government that Mr. Hastert was structuring withdrawals to evade reporting requirements. *Id.* at 4.

Further, the Government's Version reflects that at the time of the December 2014 interview, the government had moved beyond the structuring and had opened a separate

---

[1] As discussed in the Defendant's Version at page 12 n.2, the government submitted a transcript of the December 2014 interview as part of its Version of the Offense ("Government's Version"). Because the transcript does not in all respects accurately reflect the conversation as set forth in the recording, defense counsel requests that the Court rely on the recording, rather than the transcript.

4

investigation related to "Hastert and his possible uses for the large sums of cash." *Id.* As explained by the government, this inquiry was "[a]part from [Mr. Hastert's] apparent violation of the structuring laws" and was instead based on the government's concern "that Hastert's large and unusual cash withdrawals could be indicative of *other criminal activity* of which Hastert was either a perpetrator or a victim." *Id.* (emphasis added). Only when the government believed that it "had exhausted all reasonable avenues for determining *why* Hastert had been structuring his withdrawals and *how he had been using* the cash" did it seek out Mr. Hastert for an interview on December 8, 2014. *Id.* (emphasis added). Thus, the primary purpose of the interview was to advance the government's separate investigation regarding the use of the structured funds.

With this context, neither of the statements made during the December 8, 2014 interview may serve as a basis for a Guideline § 3C1.1 enhancement. The first statement cited in the PSR—that Mr. Hastert said he was keeping the cash "in a safe place"—has no bearing whatsoever on the investigation of whether Mr. Hastert structured funds to evade reporting requirements. To successfully bring a structuring charge, "the only two elements the government ha[s] to prove [are] that [the defendant] knew of the reporting requirements and that [the defendant] had structured . . . transactions for the purpose of evading those requirements." *United States v Abair*, 746 F.3d 260, 262 (7th Cir. 2014). At the time of the interview, the government had already concluded that Mr. Hastert engaged in structuring. Mr. Hastert's statement, at best, speaks to the government's separate investigation concerning Mr. Hastert's use of the funds *after* the structuring occurred.[2]

---

[2] The PSR states that Mr. Hastert admitted in his plea agreement that "he made the false statements to mislead agents as to the actual purpose of the withdrawals and what he had done with the funds." PSR ¶ 12. For the sake of clarification, defense counsel notes that Mr. Hastert admitted in the plea agreement that he intentionally concealed the reasons for his withdrawals and that he did so to mislead the agents as to the actual purpose. As discussed in the Defendant's Version at page 14, defense counsel identified several problems with the government's false statement count (Count One), including that the indictment misstated Mr. Hastert's response to the question posed by the agent

5

Further, even if one were to conclude that the statement related to the structuring charge, the statement could not have significantly obstructed the government's investigation regarding that offense because, as the government has made clear, it had already amassed the evidence underlying the structuring charge before the December 2014 interview. This makes it significantly unlikely that anything Mr. Hastert said during that interview would "significantly obstruct or impede the official investigation or prosecution of the instant offense" of structuring. *See Polland*, 994 F.2d at 1269. Tellingly, the government has not proffered any evidence to suggest that the structuring investigation was impeded by this statement. Therefore, the statement could not have been material to or significantly impeded the government's investigation regarding the existence of a structuring violation.

Likewise, Mr. Hastert's second statement—that he "exposed [himself] to a crime that [he] didn't know [he] was involved in," (PSR ¶ 10)—cannot serve as the basis for an obstruction enhancement. As recognized by the Seventh Circuit, Guideline § 3C1.1 may not be applied "to a mere 'exculpatory no' – i.e., where a defendant futilely denies his guilt, or attempts to conceal his wrongdoing, during questioning or apprehension by officials." *United States v. Ross*, 77 F.3d 1525, 1550 (7th Cir. 1996); *see also United States v. Fiala*, 929 F.2d 285, 290 (7th Cir. 1991) (no enhancement for the defendant's false statement to a police officer that he had nothing illegal in his car); *United States v. Barnett*, 939 F.2d 405, 407 (7th Cir. 1991) (no enhancement for the defendant's false statement to postal inspectors that she had invested fraudulently-obtained funds). This rule applies even if the denial causes investigators to expend additional resources. *See Fiala*, 929 F.2d at 288 (defendant's false denial of possessing contraband in his car caused police to call for a drug-sniffing dog and spend an hour and a half waiting for the dog to arrive).

---

and also mischaracterized what immediately preceded Mr. Hastert's supposed false statement. It is for these reasons, as well as others, that Mr. Hastert did not plead guilty to the false statement charge.

Mr. Hastert's statement was, at worst, nothing more than a denial of guilt during questioning by officials. The statement did not feed the government any false leads in an attempt to deflect responsibility for his offense onto another individual. Nor did it provide any false information that would require additional follow-up investigation.

Moreover, awareness that structuring is a crime is not itself a requisite element of a structuring charge. As such, even if the statement were not a general denial it could not be material to the structuring investigation. *See United States v. Pang*, 362 F.3d 1187, 1193 (9th Cir. 2004). And, as noted above, the government had already concluded that Mr. Hastert violated the structuring laws at the time of the interview. Thus, there is no evidence to suggest that this denial was in any way obstructive to the investigation regarding structuring, let alone that such obstruction was "significant."

2. <u>Statements made in relation to Mr. Hastert's subsequent cooperation do not warrant a two-point enhancement.</u>

The PSR also concludes that two statements made in relation to Mr. Hastert's subsequent cooperation warrant a Guideline § 3C1.1 enhancement: first, a statement by Mr. Hastert's prior counsel that Mr. Hastert was the victim of extortion, and, second, Mr. Hastert's denial during his February 27, 2015 proffer that he had had inappropriate sexual conduct with any team member or student, and his indication that he believed Individual A would try to destroy him by making the false story public. PSR ¶¶ 11, 28, 30. There is no evidence to suggest that either statement obstructed the investigation or prosecution of the structuring charge.

Regarding the first statement, the PSR asserts that prior counsel's statement that Individual A was extorting Mr. Hastert was false. As a preliminary matter, it bears noting that this statement represented an opinion genuinely held by Mr. Hastert's then-counsel; this was not an assertion of fact made by Mr. Hastert and should not serve as a basis for an obstruction

7

enhancement. In addition, as also discussed *infra* in footnote 3, Mr. Hastert did genuinely fear what would occur if Individual A went public, and there is nothing to suggest that this fear was unreasonable. Moreover, this opinion expressed by Mr. Hastert's prior counsel could not have impeded the government's investigation of the structuring charge. Again, this speaks to the *use* of the structured funds and not the structuring itself. At the time of the statement, the government had already established that Mr. Hastert had violated the structuring laws; that he was the victim of extortion would not have changed this conclusion.

For the same reasons, Mr. Hastert's denial of inappropriate sexual conduct with any team member and assertion that he believed Individual A would destroy him by making false allegations of abuse public could not have impeded the structuring investigation. These statements plainly relate to the government's separate investigation into the use of the funds and have no bearing on the investigation of the charged offense.[3]

There is no evidence to suggest that the above-mentioned statements significantly, or even actually, obstructed the government's investigation regarding Mr. Hastert's structuring. Notably, the government does not allege that these statements forced them to take any additional steps to investigate whether Mr. Hastert could be successfully prosecuted for structuring. For these reasons as well as those outlined above, the PSR's application of a two-point enhancement for obstruction of justice is improper.

---

[3] Defense counsel has interpreted the PSR as taking issue with Mr. Hastert's characterization of the Individual A episode as false, rather than with the fear Mr. Hastert expressed regarding the possibility of Individual A going public. To the extent the PSR is questioning the latter, there is nothing to suggest that this fear was anything but genuine. Mr. Hastert did actually fear that Individual A could destroy him if he went public. And, in fact, Individual A may still go public if he pursues Mr. Hastert civilly, as his lawyer has threatened to do if Mr. Hastert does not pay Individual A the remaining $1.8 million from their initial arrangement, plus statutory interest. *See* Defendant's Version at 12–13 and accompanying Exhibit C (Letter from K. Browne (Jan. 5, 2016)).

B.  **A Two-Point Reduction For Acceptance of Responsibility Should Be Applied.**

The government and Mr. Hastert agree that a two-point reduction for acceptance of responsibility should be applied pursuant to Guideline § 3E1.1(a).  *See* Defendant's Version at 24; Govt. Version at 26 ("[Mr. Hastert] has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct.").  While the PSR does not apply this reduction, the PSR's conclusion is premised entirely on the determination that a Guideline § 3C1.1 enhancement for obstruction of justice is warranted.  *See* PSR ¶¶ 33–35.

For the reasons set forth in Part I(A) above, no Guideline § 3C1.1 enhancement should be applied in this case.  Therefore, Mr. Hastert need only demonstrate acceptance of responsibility for his offense to justify a two-point reduction.  He has done this through his guilty plea, his public acknowledgment of guilt in open court, his cooperation with the presentence investigation, and his declaration of remorse and regret in the Defendant's Version and Sentencing Memorandum.  Accordingly, a two-point reduction for acceptance of responsibility should be applied.

II. **Misconduct Involving Individuals A and B is Not "Relevant Conduct" Under Guideline § 1B1.3.**

The Recommendation characterizes the incidents involving Individuals A and B as "relevant conduct" for the purposes of sentencing because, according to the Recommendation, Mr. Hastert's "desire to pay off [Individual A] was the reason he committed the [structuring]." Recommendation at 2.  However, Guideline § 1B1.3(a) dictates that such conduct falls outside the legally defined scope of "relevant conduct" for the purposes of sentencing.

Specifically, Guideline § 1B1.3(a) provides that the base offense level shall be determined on the basis of "all acts and omissions committed . . . by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or

in the course of attempting to avoid detection or responsibility for that offense . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." Guideline § 1B1.3(a)(1)–(2).[4] Commentary accompanying Guideline § 1B1.3(a) identifies three factors for consideration in connection with the "determination of whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct": (1) "the degree of similarity of the offenses"; (2) "the regularity (repetitions) of the offenses"; and (3) "the time interval between the offenses." Guideline § 1B1.3, Commentary, App. Note 5(B)(ii); *accord United States v. Johnson*, 347 F.3d 635, 640 (7th Cir. 2003). Further, "[w]hen one of the above factors is absent, a stronger presence of at least one of the other factors is required." Guideline § 1B1.3, Commentary, App. Note 5(B)(ii).

The episodes involving Individuals A and B were not acts or omissions committed by Mr. Hastert during the offense of structuring, in preparation for the structuring, or in the course of attempting to avoid detection or responsibility for the structuring. To the contrary, these incidents occurred approximately four decades prior to the structuring. Nor were those episodes "part of the same course of conduct" as the structuring offense. None of the "course of conduct" factors are present here—the episodes involving Individuals A and B are completely dissimilar from the nature of the structuring offense; were not part of regular, repeated conduct involving structuring; and occurred nearly four decades before the structuring. The incidents involving Individuals A and B should therefore not be considered "relevant conduct" under Guideline § 1B1.3.

---

[4] Guideline § 1B1.3(a)(2) applies "to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts." Because structuring is sentenced pursuant to Guideline § 2S1.3 and Guideline § 3D1.2(d) provides that multiple counts sentenced under Guideline § 2S1.3 are to be grouped into a single group, Guideline § 1B1.3(a)(2) applies here.

10

Mr. Hastert does not contest that the Court may consider these episodes pursuant to 18 U.S.C. § 3553(a).

## III. Speculation Regarding the Possibility of Other Sexual Misconduct Should Not Be Considered.

Although the Recommendation recognizes that "there is no evidence of any sexual misconduct since approximately 1979," it impermissibly draws an adverse inference that this could mean "[Mr. Hastert] is concealing other inappropriate conduct and/or has the ability to conceal such conduct in the future." Recommendation at 2. The Recommendation also speculates that Mr. Hastert's international travel allowed him to anonymously engage in sexual misconduct overseas. *See, e.g.*, *id.* at 4.

The fact that "there is no evidence of any sexual misconduct since approximately 1979," is not, as the Recommendation suggests, "a double-edged sword." *Id.* at 2. Instead, it means there is no basis to conclude, or even infer, that Mr. Hastert engaged in sexual misconduct since approximately 1979. Similarly, there is no basis for the conjecture that Mr. Hastert engaged in any sexual misconduct overseas. As such, defense counsel requests that this and other such speculation not be considered in connection with sentencing.[5]

## IV. Government Leaks and Subsequent Press Interest In This Case Should Not Be Cause for an Enhanced Sentence.

The Recommendation states that "unfortunately for the defendant, the need for the sentence to provide general deterrence is essential in this case due to the media attention." Recommendation at 3. As outlined in the Defendant's Version, the intense press interest garnered by this case resulted in large part from the series of impermissible and deliberate

---

[5] The Recommendation likewise proposes that Mr. Hastert "be ordered to undergo a sex offender assessment" and be required to submit to a polygraph test as part of that assessment to reveal "any recent misconduct." Recommendation at 4. Defense counsel respectfully submits that both of these measures are unnecessary for the same reasons as noted above.

11

government leaks that followed the filing of the indictment. The intense media scrutiny, generated by government misconduct, has already exacted a heavy toll on Mr. Hastert and his family; he should not be punished even further at sentencing as a result of this same media attention. Sexual misconduct with minors rightly bears a severe stigma—one that has already attached to Mr. Hastert. The additional general deterrence to be gained from a sentence of imprisonment would not be substantial.

V. **Additional Points of Clarification**

    A. **Mr. Hastert Does Not Contest the Allegations of Individual D.**

The PSR indicates that Mr. Hastert has not provided a statement to the probation officer regarding the allegations of Individual D. PSR ¶ 37. Mr. Hastert does not contest the allegations of Individual D, but in all candor he has no current recollection of the episode described by Individual D.

    B. **Defense Counsel's Characterization of the Individual A Episode Should Not Be Imputed to Mr. Hastert.**

The Recommendation states that Mr. Hastert suggested in the Defendant's Version that Individual A's allegations might not qualify as sexual misconduct, and further appears to characterize this suggestion as "troubling." Recommendation at 3. The Defendant's Version stated as follows with respect to the episode with Individual A:

> [I]n our view, the incident [with Individual A]—which occurred some forty-plus years ago—remains ambiguous. It is important to note that, in his April 9, 2015 interview collectively with the FBI, IRS, and United States Attorney's Office, [Individual A] stated that he was 'not sure if [Dennis] touched [Individual A's] genitals or brushed his genitals.' While undoubtedly many would consider this episode as described by [Individual A], consisting of a groin rub for a groin pull and a massage, to be misconduct, we are not so certain that the incident qualifies as sexual misconduct, especially for a coach and trainer forty-two years ago. Regardless of the characterization, Dennis deeply regrets that the episode occurred.

Defendant's Version at 9.

Defense counsel wishes to clarify that this observation is an argument of counsel and was made in an attempt by counsel to suggest an alternative, but objective assessment of the incident.

Dated: April 8, 2016

Respectfully submitted,

*/s/ Thomas C. Green*

Thomas C. Green
SIDLEY AUSTIN LLP
1501 K Street N.W.
Washington, DC 20005
(t): (202) 736-8000
(f): (202) 736-8711

John N. Gallo
Geeta Malhotra
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(t): (312) 853-7000
(f): (312) 853-7036

*Counsel for John Dennis Hastert*

## **CERTIFICATE OF SERVICE**

I, Geeta Malhotra, hereby certify that on April 8, 2016, I caused a copy of the foregoing to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, using the CM/ECF system, which will send notification of such filing to all attorneys of record.

*/s/ Geeta Malhotra*
