IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | ) | Docket No. 15 CR 315 |
| v. | ) | Chicago, Illinois April 13, 2016 9:19 a.m. |
| JOHN DENNIS HASTERT, Defendant. | ) | |

TRANSCRIPT OF PROCEEDINGS - Motion Hearing
BEFORE THE HONORABLE THOMAS M. DURKIN

APPEARANCES:

For the Government: HONORABLE ZACHARY T. FARDON
United States Attorney by
MR. STEVEN A. BLOCK
MS. DIANE MacARTHUR
Assistant United States Attorneys
219 S. Dearborn Street, 5th Floor
Chicago, IL 60604

For the Defendant: SIDLEY AUSTIN LLP by
MR. THOMAS C. GREEN (via telephone)
1501 K Street NW, Suite 600
Washington, D.C. 20005

SIDLEY AUSTIN LLP by
MR. JOHN N. GALLO
MS. GEETANJLI MALHOTRA
One S. Dearborn Street
Chicago, IL 60603

Court Reporter: LAURA R. RENKE, CSR, RDR, CRR
Official Court Reporter
219 S. Dearborn Street, Room 1432
Chicago, IL 60604
312.435.6053
laura_renke@ilnd.uscourts.gov

(In open court.)

THE CLERK: Okay. 15 CR 315, United States of America v. Dennis Hastert.

And I do need to get Mr. Green on the line.

(Clerk places telephone call.)

MR. GREEN: Hello.

THE CLERK: Hi, Mr. Green. It's Sandy with Judge Durkin calling on 15 CR 315, United States of America v. Hastert.

THE COURT: All right. Good morning, Mr. Green. This is Judge Durkin. Can you hear me?

MR. GREEN: I can hear you, Judge. Thank you very much.

THE COURT: All right.

MR. GREEN: Good morning to you.

THE COURT: Good morning.

Let's have the attorneys in court identify themselves.

MR. BLOCK: Good morning, your Honor. Steven Block and Diane MacArthur on behalf of the United States.

THE COURT: Good morning.

MR. GALLO: John Gallo and Geeta Malhotra for Mr. Hastert.

THE COURT: All right. Good morning.

We're here today on -- and can you hear all the attorneys in court, Mr. Green?

MR. GREEN: Yes, I can hear, your Honor.

THE COURT: Okay. We're here on a motion by the defendant to seal their response to the presentence report and sentencing recommendation. And it's presumptively sealed upon the filing of it under seal, but local rules require you to come in shortly after you filed it under seal to assert the basis for the sealing.

I don't understand having read it in light of the government's submission of last Friday what's left to seal. Is there any portion of your response that isn't already, in form or substance, part of the public record?

MR. GALLO: Judge, well, what's in the public record by virtue of the government's filing is part of the public record.

THE COURT: Right.

MR. GALLO: Our motion had to do with -- so we filed the motion because Rule 32 and Local Criminal Rule 32 say the PSR is not to be disclosed. And, in particular, the sentencing recommendation of the probation officer is supposed to be confidential.

So I think I understand your question, Judge, but I want to -- I have to answer it in two parts.

The government had information independent of the presentence report which it was free to publish in whatever manner it wished to do so. The government was not in a

position, however, to on its own disclose portions of the presentence report that are only found in the presentence report, and that is especially true for the sentencing recommendation of the probation officer.

So --

THE COURT: Well, I --

MR. GALLO: -- I think they --

THE COURT: Did they include any -- I didn't see the recommendation of the probation officer in the government's submission.

MR. GALLO: Well, okay. So let me -- I'm going to go back to your original question, though, Judge --

THE COURT: All right. Go ahead.

MR. GALLO: -- which is -- so -- and I'm not trying to cut this too thin, but I'm answering your question directly, which is that there are portions of our objections that relate to the presentence report and that were not public information prior to the disclosure of the government's submission.

Those portions which the government had information -- you know, the presentence report the information was gained from the government, so that -- those portions we have no problem with.

Our concern -- and all we're -- Judge, all we're focusing on is answering your question right this minute, which is, are there portions of our objections that are still

confidential? And we think they are, and those are the ones that relate to the probation officer's confidential sentencing recommendation. I can identify those portions for the Court if you'd like, or we can file a separate document that's limited to that.

But right now the probation officer's sentencing recommendation is confidential. We had -- we addressed and commented on that. That was not part of the government's sentencing submission. And if it was, it shouldn't have been.

THE COURT: Well, I'll hear from the government.

MR. GALLO: So if I've made myself clear, then I --

THE COURT: Okay. Any response from the government?

MR. BLOCK: Yes, your Honor.

We believe the motion to seal should be denied. As your Honor has already pointed out, there is really nothing in the defendant's under-seal filing that is not part of the public record. There are a few points that are not, but I don't think they are significant enough to warrant they be under seal.

It is the common practice in this court and other -- before other judges in the building for parties to refer to the PSR in sentencing memoranda, and certainly at sentencing I would expect the parties to be discussing in open court sections of the PSR.

The PSR itself is confidential, but no one here,

neither the government nor the defense, has wholesale cut and pasted the PSR into a document in an attempt to circumvent that. So I do not believe there's a basis to keep it sealed for that reason.

As to the probation officer recommendation, we did not state the recommendation in our filing, and nor does defendant refer to the recommendation in their proposed under-seal filing.

There is a reference in the under-seal filing to a statement the probation officer made in the document titled "Recommendation." However, I would note that in our filing, we also referred to that. We didn't quote from it, but we did refer to it as well.

So for those reasons, we think the motion should be denied and this should be part of the public record.

MR. GALLO: Can I reply?

THE COURT: Last word.

MR. GALLO: Because the government put it in its filing doesn't mean that it was the right thing to do. Judge, I'm staring at the disclosure of sentencing recommendation, and it says, "Further disclosure of the attachment is prohibited."

The portions that I'm referencing now with respect to the Court's questioning about the sealing motion have to do with our reference to those. And they are the justifications for her recommendation, which I don't think the prohibition

against disclosure was limited to the last line of her six-page recommendation. So we think -- so back to the beginning.

I understand, Judge, that there are portions of our pleading which, in an abundance of caution, we filed, by the way, because we didn't want to transgress any order of the Court with respect to keeping information confidential.

So now that the government has submitted -- after we submitted our objections, it submitted its position paper, yes, significant portions of what we say are now in the public record independent of the PSR.

Nothing, however, is in the public record having to do with the recommendation other than what the government voluntarily chose to disclose.

THE COURT: All right. Well, I looked at -- I compared the -- what's been filed publicly in this case to what's in your position paper. And to the extent there's anything in your position paper that goes to -- that's contained within the -- in form or substance -- contained in the presentence report, it's going to be commented on on sentencing day. I'm going to mention what the probation officer's recommendation is at the time of sentencing. It's not going to be a secret. I'm going to say what probation recommended.

And having read it, there's nothing in your -- I believe there's nothing in your filing that implicates the

Local Rule 32.1 that deals with presentence investigations. It is the practice, very common one, for people to file public documents that refer to what the probation officer has calculated for guidelines: for instance, other portions of the recommendation or other comments that the probation officer made.

In fact, it's routine because you have to -- if you have objections to factual information in a presentence report, almost always it's in a position paper that says, "We have the following objections," or if there's objections to conditions of supervised release, that's routinely put into publicly filed documents.

So I'm going to deny the motion to seal, and this submission will be part of the public record.

All right. I had a couple other questions, couple comments too. I'm getting a number of letters from people, citizens, relating to the sentencing. I'm getting some voice mails, one of which was fairly aggressive is one way to put it, commenting and criticizing me for the sentence I had already imposed, perhaps somewhat misinformed. I'm having it transcribed and made part of the public record.

But I'm not encouraging people to call. And but I am getting letters. We're putting them all part of the public record so they're available to you so you know what I have. And that's my instruction to my courtroom deputy: Anything we

get just put on the ECF and make it part of the public record.

Witnesses. Who is going to be called by either side as a witness at trial -- at the sentencing hearing?

MR. BLOCK: Your Honor, at this point we are in the same position as last time we were in court. We expect Jolene Burdge to testify at the sentencing, and we expect Individual D to testify at the sentencing.

THE COURT: All right. Are they going to be making statements, or are you going to be questioning them?

MR. BLOCK: I would expect them to make statements.

THE COURT: All right. In that it's material I will consider, I'll allow either side to ask them questions. And I'm going to place them under oath. If they're going to make a statement to the Court that's going to be relied upon to any degree by me, they're going to have to -- you can prepare them if you're in contact with them, but tell them they're going to be sworn in and that they'll be subject to questioning either by you if you want additional questioning or by the defense. That's only fair.

And rather than -- if there is going to be any questioning, if you know in advance, I'll have the witness go up on the witness stand rather than just stand at the podium and make a statement because it's uncomfortable questioning someone when they're standing next to you.

Are there any issues relating -- that I have to make

arrangements for relating to the confidentiality, you know, by way of screens or anything like that?

MR. BLOCK: Not at this point, your Honor. If we become aware of anything, we would advise defense counsel and the Court as soon as possible.

THE COURT: All right. All right. That's fine.

Okay. So you expect two witnesses.

MR. BLOCK: Yes, your Honor.

THE COURT: Does the defense expect to call any witnesses?

MR. GALLO: Judge, I doubt it. The only witness that we've thought about calling is Dr. Egly. But you've got his letter.

THE COURT: I do.

MR. GALLO: And so I know we're waiting for Dr. Golden's views. And so subject to those views, if they're inconsistent with Dr. Egly, we'd have to consider whether to call Dr. Egly. But absent some sort of a development like that, we're not presently planning on calling a witness.

THE COURT: All right. And Dr. Golden is reviewing records and doing what he thinks is necessary to give me an informed decision about the health of the defendant. And I expect he will have a written report, which we'll make available to the government and the defense when it's prepared.

The final question I have relates to the statements

made and the conduct engaged in at direction of the government by the defendant after his interview where he basically made recorded phone calls to Individual A and statements he made to the government relating to that.

It was under a proffer letter. Proffer letter contains a reference to a section in the guidelines that say you can't use proffer information absent a finding that the information provided was false, but you can't use it to enhance an offense level under the guidelines.

The government has said they're not attempting to use it in aggravation other than to put in context the rest of the story. The defense has objected to that. This was all done by way of footnote.

What is the position of the government -- and then I'll hear from the defense -- as to whether or not I can consider that conduct under 3553(a)? I'm not going to use it to enhance the offense level. That's unnecessary and probably not proper.

But first is, what's your view as to whether or not that proffer letter was violated because you -- if you believe the defendant provided false information? And then, two, whether you believe he provided false information or not, can I use that conduct in evaluating -- in making a determination as to the proper sentence? Can I use it under Section 3553(a)?

MR. BLOCK: Yes, your Honor.

It is the government's position that the defendant breached the proffer agreement by providing false information to the government during the proffer. Namely, he stated that there was no truth to Individual A's allegations when, in fact, his allegations were true.

That being said, the government is not asking the Court to consider that statement made by the defendant during the proffer for any purpose. That is our position. We understand probation has taken a contrary position to that. And the Court may be able -- may do that on its own. We are not asking the Court to consider any statements made by the defendant during the February 27th proffer.

That being said, we do believe that the Court can consider the defendant's actions. And those include his attempt, by agreeing to make recorded phone calls, to deflect attention from himself and on to Individual A, knowing that Individual A's allegations were true, but taking the position they were false.

It's also our position that the March recordings made by the defendant are not proffer-protected, nor is the defendant's failure to follow the agent's instructions prior to making those calls.

So we are drawing a distinction between the statement he made during the proffer session that we are not asking the Court to consider and his actions in making the recorded calls

under false pretenses that we believe are appropriate for the Court to consider.

THE COURT: All right. My question is a little different. What if I want to consider it? Is there a prohibition?

MR. BLOCK: We do not believe there's a prohibition on the Court considering it if the Court chooses to, but we are not advocating for that because of the proffer letter.

THE COURT: Well, that's -- if you believe he made a false statement by the terms of the proffer letter itself, that's an admissible statement were I to use it for purposes of enhancing the offense level. You've done that with other defendants in the circumstances where someone provides false information in a proffer, what you believe to be false information in a proffer.

And that's your call. That's not the call of the defense. That's "If we believe that you have provided false information" -- "we" being the government -- "we can use this information to enhance your sentence" -- "enhance your offense level."

Do you believe he made false -- gave false information in the proffer?

MR. BLOCK: We do believe he gave false information during the proffer.

THE COURT: All right. And is it your position that

even if you're not advocating I use that information, I legally can do it?

MR. BLOCK: You legally can do it, yes.

THE COURT: All right. Now I'll hear from the defense.

MR. GALLO: We have no objection to your considering it.

THE COURT: Okay. All right. That's what I wanted to know. All right.

Anything else that we need to discuss today?

Well, I have another question. Are there going to be more submissions? You have till Friday of this week to file replies of any kind or any responses to what's been filed already. Is the government expecting to file anything else?

MR. BLOCK: We do not at this point, your Honor.

THE COURT: How about the defense?

MR. GALLO: We have no expectation of filing anything else.

THE COURT: Okay.

MR. GREEN: Your Honor, may I be heard for a moment?

THE COURT: Sure, Mr. Green.

MR. GREEN: With respect to the last discussion where the government indicated its views that there were misstatements that occurred during the proffer, you know, I understand their views with respect to Mr. A. I'm not sure

that I completely understand what they're talking about when they say that the conduct of the defendant in placing -- I think they're referring to in placing telephone calls.

I -- the fact -- the fact that the calls did not confirm what Mr. Hastert's present counsel, then counsel, believed was the truth -- and I think, with all due respect, my client was feeling that impact. The fact that the call didn't confirm the assessment of Mr. Hastert's counsel and I think Mr. Hastert's probably inability to articulate the pressures that he was under at the time, I'm not sure that -- I mean, I don't know -- I don't know what there is about that conduct that then becomes a factor.

I mean, Mr. Gallo expresses our view completely. I mean, I think you are unrestrained in what you can consider.

But I'm not sure what it is that the government is contending, because I may want to say something in a further, you know, submission to you on that score. But, again, I'm a little bit at a loss to just take from what they've said what the argument is.

THE COURT: Mr. Block, do you want to respond?

MR. BLOCK: Yes, your Honor.

I think there is a significant distinction between an individual agreeing to make a recorded phone call on behalf of the government, knowing that the defendant -- that Individual A has made false allegations and lied about him or the individual

knowing that those allegations are, in fact, true and he's making the recording anyway.

It's a significant distinction. We can argue it more at the sentencing hearing if your Honor would like to hear on that. But I think --

THE COURT: Oh, I would. Believe me, I would.

And, Mr. Green, if there's any ambiguity about it, I think the government's position -- or at least my reading of this is the defendant, rather than admit to conduct with Individual A that precipitated an agreement between them for a payment of a large amount of money, basically said Individual A was holding him up and was extorting him, and it caused the government to go out and investigate Individual A.

And that's how I view the representations by the government. That's an aggravating fact, in my mind. So at sentencing or in a memo, you'd be best to respond to that because that's not conduct that's 40 years old; that's conduct that's less than a year old. And that I view as an aggravating factor, which is why I wanted to know if there was any view by the parties that I needed to restrict my consideration of it.

So if you need a preview of what I find among the aggravating factors in this case, that's a big one. And if you want to respond to that in writing or be prepared to respond to that at sentencing, you'd be best to do that.

MR. GREEN: All right, sir. Thank you.

THE COURT: Anything else from the government?

MR. BLOCK: No, your Honor.

THE COURT: From the defense?

MR. GALLO: No, Judge.

THE COURT: Mr. Green, anything at your end?

MR. GREEN: No, sir.

THE COURT: Okay. Thank you all.

MR. BLOCK: Thank you, Judge.

(Concluded at 9:40 a.m.)

C E R T I F I C A T E

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter.

*<u>/s/ LAURA R. RENKE</u>* *<u>April 15, 2016</u>*
LAURA R. RENKE, CSR, RDR, CRR
Official Court Reporter