15 CR 315

April 18, 2016 YP
FILED
APR 18 2016
Judge Thomas M. Durkin
United States District Court

15 April 2016

United States Department of Justice
Attorney General Loretta Lynch
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

**Reference: Freedom of Information Request of any and all documents regarding any and all investigations Mr. Hastert and Former Congressman Foley.**

Madam Attorney General Lynch;

   I am writing to you today along with the Inspector General once again requesting that both of you order an investigation into the ICAC Program which is long overdue and with all the news coming out about Mr. Hastert.

   With members of the press doing their jobs, and research we have found that he was the grand architect along with other members of Congress who have also had to resign in disgrace because of inappropriate actions and comments towards those who came to our nations capitol and work.

   *Mr. Hastert even spoke out* "The instant messages, reportedly between Congressman Foley and a former page sent in 2003, are vile and repulsive to me... When they were released, Congressman Foley resigned. And I'm glad he did, if he had not, I would have demanded his expulsion from the House of Representatives." then he went on to say, "as the Speaker of the House, I am disgusted that Congressman Foley broke that trust. Anyone who had knowledge of these vile instant messages should have turned them over to authorities immediately so that kids could be protected." " Yesterday I sent a letter to the Attorney General requesting he investigate to what extent any federal laws were violated by Congressman Foley... I also sent a letter yesterday to Governor Bush, requesting an investigation to determine what state laws were violated.. Since I've been speaker we have moved aggressively to insure the safety of these kids..." His work on the Adam Walsh Act was "hypocritical and most surely self serving" he is a hypocrite and the monster he was to violate 5 young men under 18 years old and the passage of the unconstitutional acts and programs passed in his tenure as speaker of the House of Representatives.

   Hundreds of thousands of individuals who have had to face losing their home, jobs and even death treats, even now we have along with family members and friends have been lied too and betrayed by the one branch of our government that is to ensure and protect the Constitution of these United States and the rights of it's citizens. And now we have to live with the draconian punishments he and others fostered and forced on the American people for political gains. " *At home, we put the security of our children first and Republicans are doing just that in our nation's House.*" Here this predator held the third most powerful position in our government and he is an offender of boys. According to government officials he paid the victim hush money out of fear " *it would increase the chance that other former students he molested would tell their stories.*" Thus, he should be held accountable for his actions.

Regarding the punishment of Mr. Hastert, he should have to live under the same draconian punishments that he and his colleagues forced on the American people. (1) He should have to register and a sexual predator for life. (2) He should have to wear a monitor. (3) He should have NO contact with a child under 18 years of age, including if NO contact if he should have grandchildren under 18 years of age. (4) He is not to live within a 1000 feet of a school, park or any where children might gather. Therefore, he should be forced to live his life in the same manner in which he has forced on his victims thru these illegal sting operations and unconstitutional violations that he championed.

As a victim of his, along with the thousands of other victims across this nation, today as one of the victims of the draconian acts and programs I demand from you as the chief law enforcement officer of this nation and the Inspector General to once and for all order and complete investigation of the ICAC Program and the tactics and actions the courts and law enforcement seeking those grant funds from the Department of Justice at all cost even at the expense of the Constitution and the rights of it's citizens.

As a incest survivor and being molested by an adult for 3 years and now I am once again a victim of draconian over reaching government officials and going on four years I have been requesting along with others and not getting support from a branch of government who is protect my rights, when a corrupt judicial system in Florida is now hell bent on protecting those grand funds you are dishing out.

Ms. Lynch, Please find attached to this letter a copy of the last complaint among many others that has been filed with the your office along with the Inspector General and those staff members that run the day to day operations of this program. As of this date NO one has made contact with me or the others that have filed complaints regarding the ICAC program, they seem to pass you around to other divisions within the Department of Justice.

All of this is a result of Mr. Hastert and his actions as the third most powerful person within our structure of government. The citizens of this nation need to see and feel that our judicial system is not corrupt and is working to fight for your rights and not just working to keep the money flowing from Washington, D.C. over these illegal sting operations and violation of our constitutional rights.

Respectfully yours,

Samuel E. Odom
640 Lee Road
Orlando, Florida 32810

CC: President Barack H. Obama
     Honorable Thomas M. Durkin
     Inspector General Michael Horowitz
     Mr. David Muir – ABC News Anchor
     Mr. Lester Holt – NBC News Anchor
     Mr. Scott Pelley – CBS News Anchor

LETTER OF COMPLAINT!!!

Our government appears to have turned into a criminal organization that is using the exploitation of children that does not exist to exploit the citizens of this country in their money scheme. Everyone knows that is not what the purpose of the ICAC program was created for and all that are involved in this conspiracy are going to any lengths to continue to receive those funds and whatever is necessary to reach that goal. Therefore, the tactics and actions of those involved in this conspiracy so that they may continue a percentage of $60,000,000.00 a year for these ICAC Racketeering Sting Operations. The money should and could be used for disabled veterans, feeding the homeless.

1. Office of The United States Attorney's – 8.3.010 – The United States Attorney is responsible for the enforcement of criminal civil rights statutes in accordance with the procedures set forth below. The Criminal Section oversees the enforcement of the criminal civil rights statutes administered by the Civil Rights Division. The principal statutes are 18 U.S.C. 241 (Conspiracy to injure citizens in the exercise of federal rights); 18 U.S.C. 242 (willful deprivations of federal rights under the Color of Law).

2. The federal Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. 1961-1968) prohibits (1) acquiring, establishing, or operating an enterprise with illegally derived income, (2) **acquiring or maintaining an interest in or control of an enterprise through illegal activity**, (DOJ) and (3) using enterprise to commit illegal acts. RICO defines "racketeering activity" as a long list of state and federal crimes, (various include **fraud offenses**, obstructing justice, criminal investigation, **sexual exploitation of children "by government officials for financial gain"**, kidnapping).

3. CORA makes it a crime for anyone who had knowingly received proceeds from racketeering. And under CORA "racketeering activities" mean committing, **attempting to commit, conspiring to commit**, or intentionally aiding, **soliciting** (Task Force), **coercing or intimidating another person to commit a specified list of felonies (Undercover ICAC sting operations)**. Thus, including collusion and Black's Law Dictionary definition of collusion includes **"secret combination, conspiracy, or concert of action between two or more persons for fraudulent or deceitful purpose."** Therefore, this type of conduct would appear to be covered by both RICO and CORA and federal prosecutors have used RICO in cases involving public officials.

4. Section 1961 (1) of the RICO Act list all of the crimes upon which RICO violation must predicated. A RICO claim can be predicated on not only numerous federal criminal violations, but also on violations of certain state criminal laws. Regardless of whether a RICO claim is predicated need not be criminally convicted before a civil plaintiff can sue for treble damages under RICO. Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 493 (1985). The statutes requires only that criminal activities are **"chargeable"** or **"indictable"** under state or federal law, not that the defendant has already been charged or indicted.

    Congress is **NOT** supposed to pass laws (a violation of the First Amendment) that financially incentivize the creation of crime and certainly not incentivize the government to do nothing about it by getting a 25% kickback despite blatant constitutional violations. Those involved in this conspiracy seem to be decent people and that others have lost their way and are being blinded by greed, fame, and power. We know that those involved are meeting and talking behind closed doors and it is common knowledge but all of you have have been elected to jobs entrusted to you by the people and in taking a oath to defend the constitution against all enemies foreign and **DOMESTIC**... and protect our constitutional rights. There has become this attitude of us, the wrongly accused and deliberately exploited, versus corrupt government officials and a society being lied to by those same corrupt officials. The Attorney General of the United States as **OUR** top law enforcement officer is supposed to protect the rights of it's citizens and should be investigating these ICAC Task Force complaint's as required by law but the 25% kickback from illegal arrest and convictions appears to be more important than the constitutional rights of the citizens which you are sworn to protect.

    The Color of Law violations that are occurring across this nation on a regular and sometimes on a daily basis thus are classified as violations of the RICO Act because personnel are committing crimes like (fraud, wire fraud, uttering false instruments, interfering with and misusing interstate commerce, obstruction of justice, due process rights and intentional torts) so they create **NONEXISTENT** crimes for profit. The illegal tactics and actions of those working now **FULL TIME** within each of the ICAC Task Force posing as a sexual promiscuous teen looking for a sexual encounter with a random middle age man on any given **ADULT** site (not social media sites as officials claim with members of the press) They are searching for as many men as possible by posting **SEVERAL** ads or profiles (as they have admitted under oath in numerous dispositions) so as to create and generate a non-existent crime which has already been proven to be a violation of due process, standardized procedures.

    All of those involved in the conspiracy continue to ruin professional careers, lives and not just the lives of those that have been falsely arrested and convicted but also the lives of their families. Conspirators have even forced some men to take their on life because of embarrassment and illegal and unconstitutional pressure from government officials. Those of you in this conspiracy know what you are doing is illegal and unconstitutional and you also know that the crime of solicitation for sex of **ANY** minor does **NOT** occur in record numbers as we have seen with some cases in Florida being nolle prosequi when defense attorney's have raised objective entrapment and prosecutor's and conspirators what the illegal and unconstitutional money scheme protected at all cost. No minor is ever involved or in danger at any given moment when law enforcement initiate their illegal and unconstitutional fishing expeditions on **ADULT** sites. Therefore, no individual has any authority to violate the constitutional rights of the accused by conspiring together with other government officials to obtain unconstitutional convictions.

# Florida police found to have entrapped men with online sex stings and then seized their property

Noah Pransky
WTSP
Mon, 29 Dec 2014 02:48 UTC



A drawn-out struggle to obtain public records has started to yield results for 10 Investigates, as local agencies have started releasing limited records - and providing insight - regarding how law enforcement conducts controversial sex "predator" stings.

Records recently obtained by 10 Investigates - primarily through the court system, since law enforcement agencies continue to deny public record requests - detail the incredible man hours dedicated to the stings, ways some officers violated the rules to boost arrest totals, and even how agencies take valuable property from individuals accused.

- Part 1: Officers breaking the rules on sex stings
- Part 2: Stings not arresting whom you think they are
- Part 3: ACLU leader calls for federal review of DOJ dollars
- Part 4: Military targeting civilians in sex stings
- Part 5: Law Enforcement admits deleting public records
- Part 6: Recent stings reflect changes after investigative reports

**10 Investigates previously reported how many of the men arrested and publicly shamed by made-for-TV press conferences were not actually looking for children online. Instead, they were looking for other adults when detectives started to groom and convince them to break the law.**

And while law enforcement leaders have denied any widespread issues with the operations, 10 Investigates continues to find evidence - in documents those agencies wanted to keep private - that details a pattern of officer misconduct in an effort to boost arrest totals.

Following 10 Investigates' year-long investigation, it was apparent law enforcement's approach toward the stings had changed: they ran fewer operations, skipped press conferences sometimes, and arrested far fewer men than had become routine. The Department of Justice also launched a review of Central Florida's Internet Crimes Against Children (ICAC) task force.

Yet law enforcement agencies have continued to stymie some of 10 Investigates' questions and record requests, often providing overly-broad public record exemptions as an excuse.

## Records in Question

10 Investigates was seeking detectives' emails to men who ultimately showed no interest in having sex with underage teens. An open-records advocate in Attorney General Pam Bondi's office suggested the records should be public.

However, most of the examples 10 Investigates obtained through the judicial system were from men who were ultimately arrested - not the cases where officers unsuccessfully tried to deceive a target. 10 Investigates was trying to determine whether entrapment techniques were limited to just a few isolated cases, or whether they were more widespread.

Yet, despite the limited records obtained, 10 Investigates was able to determine a pattern of exaggerations on arrest reports by law enforcement officers involved in the stings.

**Some officers claimed men were looking for children online when there was never any evidence to support the statement. But officers would use the claims to pile on additional felony charges, which didn't just serve to publicly shame the accused men, but also allowed law enforcement to seize their property: two repercussions that - even when some of the men are exonerated - typically burden them socially and financially for the rest of their lives.**

## Profiting Off Predator Stings

In addition to federal grant dollars used to run the ICAC stings, **10 Investigates found law enforcement agencies frequently took the vehicles from men arrested and kept them as their own - even when charges against the men were dropped.**

In November, 10 Investigates reported how **Florida's Contraband Forfeiture Act made it easy for agencies to seize property as their own from anyone accused of committing a felony - even if charges are ultimately never filed.**

Sex stings have become especially rich sources for seizures, since almost every man arrested is accused of traveling to seduce, solicit, or entice a child to commit a sexual act...**even though no real children are ever involved in the stings.** However, the accusations are felonies, meaning **law enforcement can seize suspect's vehicles, making it extremely difficult for them to ever get them back without paying thousands of dollars - or more - in cash to the arresting agency.**

For example, in one January 2014 sting where the Clearwater Police Department (CPD) and Pinellas County Sheriff's Office (PCSO) arrested 35 men in a single weekend, CPD seized 19 cars as their own under Florida's Contraband Forfeiture Act.

The two agencies also arrested "in excess of 20" men in a similar April sting, which was after 10 Investigates started asking questions about the operations, and 11 more men in a September sting, after 10 Investigates had aired multiple stories on the topic.

Even though the number of men arrested dropped once a spotlight was shined on how they operated, CPD and PCSO were still able to seize nine vehicles in the April sting and three vehicles in the September sting.

**If suspects are unable to win their vehicles back through civil procedures, the agencies are allowed to keep the vehicles for their own use or sell them at auction for cash. Often, attorneys for the agencies negotiate to sell the vehicles back to their original owners for up to half of the vehicle's estimated value.**

**Comment:** For anyone reading this, it's probably getting difficult to see the difference between the police department and a criminal organization. We'll save you the time right now - there is no difference. They have set the rules up so that they can do what they want, even if it's completely criminal in any other context. Welcome to the U.S. Police State!

One 24-year-old man, arrested in the January sting in Clearwater, had to pay $10,000 cash to get his 2014 Lexus returned. And even though all felony charges were later dropped in his case, he will not get the money back for either the negotiated settlement or the fees he paid an attorney to handle the vehicle case.

Clearwater's police chief at the time, Anthony Holloway, is now the chief of St. Petersburg's police department, but has not yet accepted interview requests for this story.

The Polk County Sheriff's Office, which serves as the leader of Central Florida's ICAC task force, also has seized a great deal of property the last few years in predator stings. The agency provided a list of nine late-model vehicles it was ultimately awarded, as well as several other pending or negotiated cases.

The Polk Co. Sheriff's Office also seized $15,900 from a suspect in a June 2013 sting, negotiating with him to split the proceeds 50% each. The sheriff's office netted $7,950 from the seizure.

Similar hauls were noted from predator stings around Florida, including in Osceola County and Lee County.

## More Entrapments, Violations of Rules

Most of the cases examined by 10 Investigates involved men who weren't necessarily looking for underage teens, but either posted - or responded to - **ads seeking adults.** Sometimes, the officers would act as an interested adult with a teenage "sister" who was also interested.

**Even though many of the men had no interest in the underage decoys, if they traveled to meet the adult, they were arrested as a "sexual predator" and charged with "traveling to meet a minor."**



In the case of a 27-year-old Cape Coral man, arrested during the Lee County Sheriff's Office (LCSO) sting this past May, deputies arrested him even though he didn't even travel to meet a child for sex. Law enforcement officers responded to the man's legal "casual encounters" Craigslist ad, pretending to be a 14-year-old girl, even though the ad said, "age for all women must be 18+ no one under email me plz."

Number of men arrested in Florida sex stings since 2008, sorted by age.

**The man repeatedly told the undercover detectives that he was "not OK" with meeting up with an underage girl, but because he didn't immediately end the conversation, he was arrested for utilizing his phone to solicit a sexual act from a child. Detectives went to his house and arrested him as a sexual predator of children.**

Prosecutors decided there was insufficient evidence to prosecute on either of the accused charges, yet the accusations and man's name remain on LCSO's online press releases and other media outlets' news stories.

-----

**Law enforcement officers also frequently broke their own rules and introduced sex to otherwise innocent conversations.**

Among the victims of detectives ignoring ICAC guidelines was a 21-year-old in Pinellas County who responded to a DateHookup.com ad posted of an 18-year-old woman. The officer who posted the ad during Operation *Home Alone II* started exchanging messages with the man when he asked her to a movie.

The officer wrote, "are you Ok with me being under 18?" The 21-year-old continued the conversation.

Following more exchanged messages and text messages, the detective later added that "she" was about to turn 16, the age of consent in Florida.

**As the two continued to swap texts, the man said "I don't want to have sex, is that OK?" But the detective, who repeatedly rejected the man's interest in a possible relationship, kept pushing sex and threatened to call off their meeting. When the man finally indicated he would have sex, police had enough to charge him with numerous felonies.**

Prosecutors declined to file charges, but the man's name and accusations still appear on at least one local media outlet's website.

-----

A 19-year-old man in Orange Co. was accused of soliciting the guardian of a 13-year-old decoy to arrange sex with her. But the evidence proved differently, as the man was merely responding to an innocuous ad from a 26-year-old woman, which was posted by law enforcement. The detective later tried to convince the man to have sex with the woman's "younger sister," even though he showed little interest.

According to notes from the prosecutor, "this is a tough case" because of "entrapment issues."

The man chatted with what he believed to be a 26-year-old woman for five days and the "Law Enforcement Officer suggest(ed) sex first on 2nd day." The defendant said several times he wasn't interested in the 13-year-old, even suggesting he bring a younger teenager boy for the girl when the detective kept bringing the teenager into the discussion. The prosecutor also noted the "law enforcement officer again suggests illegal sex 2 more times" but the defendant was non-committal."

**Ultimately, after hundreds of text messages, the man agreed to sex with both females, and was arrested upon arrival. The state declined to prosecute, but the accusations and man's name remain public record.**

## Websites Used

Court records from "Operation *Home Alone*," a January sting by the Clearwater Police Department and Pinellas County Sheriff's Office, detail 34 websites and apps targeted by law enforcement as potential breeding grounds for child predators. There is no love lost between deputies and sites like Craigslist and Backpage.

But the law enforcement plan also included sites like Facebook and Twitter, as well as legal dating and social media sites MeetMe.com, Fling.com, Omegle.com, Hi5.com, Tagged.com, and SpeedDate.com.

**In most cases, detectives weren't posting ads of children, but ads of adults looking other adults. They would then later introduce a child to the conversation, or switch his/her age to that of a teenager.**

And, as 10 Investigates previously reported, detectives were frequently reaching out to law-abiding men posting law-abiding ads on legal dating sites, seeking other adults. In Lee County, arrest records indicate detectives responded to one man's ad on the traditional dating site PlentyOfFish.com.

10 Investigates has pushed to see other records from law enforcement officers responding to legal dating ads on legal dating sites, but almost every request has been refused. Often, public record exemptions are cited, ranging from "active investigation" to "confidential surveillance techniques," but a Lee County Sheriff's Office spokesperson said records from their June sting had already been destroyed by July.

## Taking Away Vital Resources

**10 Investigates reported this summer how law enforcement agencies were spending tens of thousands of dollars and hundreds of man-hours on each sting. Yet the majority of the men arrested were either teenagers or in their early 20s and not considered high risks to children.**

In fact, some law enforcement officers have told 10 Investigates the federal ICAC guidelines seem to de-emphasize undercover stings where there is no probable cause to begin with.

Polk County Sheriff Grady Judd repeatedly said men seeking children online was a problem in Central Florida, but provided few examples of actual children being approached.

New documents - notes obtained from prosecutors trying to establish probable cause in court - further bolster 10 News' initial findings that the stings offered a solution to a supposed widespread problem that didn't actually exist in Central Florida.

In 2013, a prosecutor declined to pursue "traveler" charges against a man caught in an Osceola Co. sting because the "state tried to find evidence that the crime of solicitation of minor via computer (parent) was taking place...there are no known cases."

The prosecutor notes the detective "asked ICAC affiliate + the FBI and was able to come up with about 5 examples Nationwide. None in Central FL."

Another Osceola Co. prosecutor in the case of a 21-year-old defendant wrote, "biggest concern was entrapment argument b/c the LE Operation was not really addressing on-going criminal activity...There have been NO documented cases in this area of parents being solicited on-line for sex w/their minor children."

You can read those documents here and here, but WTSP chose to redact personal information and case numbers from the documents to protect men who have been exonerated from their crimes. The state also redacted some information in accordance with Florida public records laws.

10 Investigates reported how spending tens of thousands of dollars at a time on these controversial stings could be taking away valuable resources from other areas of cybercrime.

In fact, a 2010 audit by the US Dept. of Justice's Office of Justice Programs told the Polk County Sheriff's Office that the ICAC task force wasn't responding quickly enough to some high-priority CyberTips:

**"From review of data over the period of March 2009 thru March 2010, there were multiple instances when it took the agency 20-30 days to review CyberTip data,"** the agency wrote in a summary letter. "Given the amount of federal support in this initiative, the average review time is not meeting the goals of the program. OJJDP strongly recommends that the locality provide additional resources towards the review, referral, and investigation of CyberTip data. These tips represent crucial information that may lead to the rescue of a child victim."

Records indicate the other issues in the 2010 audit, including improved reporting & accounting from the task force, appear to have been addressed.

A DOJ spokesperson tells 10 Investigates it is currently reviewing the millions of dollars in grants awarded to Polk County Sheriff's Office and the Central Florida ICAC task force.

## Air Force Spending Resources Too

Another issue exposed by 10 Investigates involved the potentially illegal involvement of the Air Force Office of Special Investigations (OSI). Federal law dating back to Reconstruction mandates the military may not be used to enforce local laws.

In some recent cases, an OSA agent working out of MacDill Air Force Base admitted to reaching out to random personal ads online and hoping he might snare a servicemember.

Among the cases profiled by 10 Investigates was that of a man arrested in Pinellas County earlier this year. The prosecution agreed to drop all sex-related charges in exchange for a plea bargain on one misdemeanor charge of "unlawful use of a two-way communications device."

The defense attorney tells 10 Investigates it was "too good of a deal" for his client to pass on, but had full confidence a judge would have thrown the case out, especially after a federal court in Seattle issued a similar ruling.

Pinellas County Sheriff Bob Gualtieri said his agency has stopped working with the Air Force OSI on predator stings since 10 Investigates brought it to his attention. Gualtieri also declined to call a press conference following Pinellas County's most recent undercover sting in September, a departure from the standard made-for-TV events agencies typically hold for media outlets at the conclusion of an operation.

## Final notes

Prosecutors tell 10 Investigates that even though a number of law enforcement leaders won't participate in the undercover stings anymore, the agencies that are still conducting them are paying more attention to the rules than ever before.

State attorneys' offices have worked with law enforcement agencies to make sure the stings are targeting potentially-dangerous predators seeking children, and not teenagers who may just be looking for partners close to their age.

If you have any additional information as to how the predator operations are conducted, please contact Noah Pransky at npransky@wtsp.com. You can reach Noah on Twitter at @NoahPransky, or connect with him on Facebook too.

**Related Articles**
- Russian school may open in Houston, Texas
- CEO of Siemens calls for lifting of anti-Russian sanctions
- Everything is super swell at Johnson & Johnson, except for the cancer-causing baby powder

